# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CORTNEY BRYANT-EL, | * | |
| v | * | Civil Action No. CCB-17-3675 |
| DAYENA CORCORAN, JEFF NINES, OLIVIA RYAN,[1] RYAN BROWNING, DAWN SHOWALTER, JANE/JOHN DOE, *Nursing Staff* | * * * | |
| | *** | |

## **MEMORANDUM OPINION**

Cortney Bryant-El is suing defendants pursuant to 42 U.S.C. § 1983 for allegedly denying him adequate medical care at North Branch Correctional Institution (NBCI). Defendants' former Commissioner Dayena Corcoran and Assistant Warden Jeff Nines (collectively, the "State Defendants") filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Also pending is defendants Ryan Browning and Dawn Showalter's [2] (collectively, the "Medical Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. The State and Medical Defendants have filed declarations and verified records in support of their dispositive motions. Plaintiff filed an opposition[3] to which the Medical Defendants filed a Reply.

---

[1] In his supplement, plaintiff asks to "retract[]" his claims against Olivia Ryan. ECF 15 at p. 14. His request will be granted. Plaintiff originally named Stacie Mast and Tammy Buser as defendants, and later withdrew the claims against them. ECF 36, 42.

[2] The State Defendants state that Dawn Showalter, R.N. is incorrectly named as Dawn Hawk in the Complaint. ECF 20 n.1; ECF 24. The court notes, however, that her August 20, 2018, declaration is signed "Dawn Hawk." ECF 27-5 at p. 5. The court shall refer to this defendant as Dawn Showalter.

[3] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk informed plaintiff that defendants had filed dispositive motions and he may file oppositions with exhibits and affidavits. ECF 26, 31. Plaintiff filed exhibits with his opposition, but no declarations under oath. ECF 37. However, in Civil Action CCB-18-1519 plaintiff filed a declaration attesting under oath that he expressed his need for medical care to Browning and Showalter, informed them he has asthma, and denying his breathing was even and unlabored. *See* Civil Action CCB-18-1519 at ECF 17-

Having reviewed the pleadings, briefs, and exhibits, the court finds that a hearing is unnecessary at this time. *See* Local R. 105.6 (D. Md. 2018). For the reasons set forth below, the State Defendants' motion for summary judgment (ECF 25) will be granted. The Medical Defendants' motion for summary judgment (ECF 27) will be granted in part and denied in part.

## PROCEDURAL BACKGROUND

Plaintiff was transferred to NBCI on January 26, 2017, and claims that he was not provided medical care for asthma when he arrived and that, when he was prescribed various medications for asthma, allergies, and reflux, he was denied timely refills of the medications. ECF 1; ECF 15 at p. 9. In his complaint plaintiff sought emergency injunctive relief to require refills on his medication and sought "permission to pursue damages" after he received an answer to a "complaint lodged with [the] Commissioner of Correction."[4] ECF 1 at pp. 3, 7, 10.

In light of plaintiff's alleged need for emergency injunctive relief, the court directed counsel for the Department of Public Safety and Correctional Services (DPSCS) to file an expedited response addressing why injunctive relief (to provide his prescribed medications) should not be granted. ECF 8. Plaintiff then filed an Amended Complaint to add new claims and new defendants. ECF 9. After the matter was fully briefed, the court denied plaintiff's request for injunctive relief, permitted his claim that he was denied prescription medications prior to December 11, 2017 to proceed for service on defendants, and granted him additional time to supplement his claim. ECF 13 at pp. 3–5. Plaintiff was instructed to file a separate case if he

---

3. In that case, the court denied Browning and Showalter's motion for summary judgment. *Id.* at ECF 32, 33. Mindful that plaintiff is a pro se litigant and that he filed related medical claims in a separate and related case, the court shall take notice of that declaration in reviewing plaintiff's claims in the instant matter. *See Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016) (noting that a court may take notice of matters of court filings).

[4] Plaintiff provides no additional detail about this "complaint."

2

wished to raise additional claims against new defendants.[5]

On April 23, 2018, plaintiff filed a supplement to the Complaint to request compensatory and punitive damages. He claims the Medical Defendants have violated his rights under the Eighth Amendment, unlawfully retaliated against him, and violated Maryland Law, and claims the State Defendants have violated his rights under the Eighth Amendment, the Equal Protection Clause, "Maryland law, and Departmental regulations." ECF 15 at pp. 4–6, 12–13.[6]

## FACTUAL BACKGROUND

### I. The Medical Defendants

On January 26, 2017, plaintiff was involved in a use of force incident at Western Correctional Institution (WCI) during which correctional officers used pepper spray. Following the incident, plaintiff was examined at 2:22 p.m. by Ryan Browning, LPN, who reported plaintiff's respiration was "even and nonlabored" and there were no signs or symptoms of distress. ECF 27-3 at p. 3; Browning Decl. ECF 27-5 at p. 2 ¶¶3–4. Plaintiff voiced no concerns of injury, denied any pain, had no difficulty breathing or seeing, and returned to his cell without difficulty. *Id.* After plaintiff was transferred to NBCI later that day, he was examined by Dawn Showalter, R.N. at 4:34 p.m. Showalter determined plaintiff's respiration was "even and unlabored," his lungs were clear, and he had no injuries or complaints. ECF 27-3 at p. 5; Showalter Decl. ECF 27-5 at p. 4 ¶¶3–4. After examination, plaintiff returned to his cell without difficulty. *Id.*

Plaintiff provides a different account of his medical evaluations. He asserts the pepper spray made it difficult for him to breathe and caused burning in his eyes and over his body.

---

[5] Plaintiff presented the new claims against additional defendants in Civil Action No. CCB-18-1519 (D. Md.).

[6] After this matter was briefed by the parties, plaintiff filed a request to add a new claim that he was not being seen for chronic care. ECF 43, 44. The Medical Defendants oppose the filing, arguing *inter alia* that the new information makes no reference to defendants and concerns events that are alleged to have occurred long after the matters at issue here. ECF 45. Plaintiff will not be permitted to introduce these eleventh hour claims.

Plaintiff states he informed Browning and Showalter that he has asthma. ECF 15 at pp. 2–3, 5; Civil Action 18-1519, Bryant-El Decl. ECF 17-3. Browning allegedly responded, "Well you have too much mace on you for me to do anything for you." ECF 15 at p. 2. Plaintiff claims Browning "purposely prevaricated" about his need for treatment by falsely claiming that plaintiff's breathing was even and nonlabored, and plaintiff reported "I'm good." *Id.* at p. 3. Plaintiff denies ever stating, "I'm good," and claims any assertion that his breathing was even and unlabored is "a lie." Civil Action 18-1519, Bryant-El Decl. ECF 17-3 at ¶¶6,7.

When plaintiff explained to Showalter his need for an asthma inhaler because he was unable to breathe without "strenuous labor due to the effects of the chemical compound still adhering to [his] hair and skin on [his] respiratory condition," Showalter allegedly replied, "[o]fficers protect us and we look out for them." ECF 15 at p. 4. Plaintiff claims Browning and Showalter's demeanors were hostile and they failed to respond to his requests for medical care in retaliation for the incident involving correctional staff. ECF 15 at p. 3; Civil Action 18-1519, ECF 17-3 ¶¶4, 9. He faults them for failing to provide him with his inhaler or instructing custody staff to do so. ECF 15 at p. 3–4. Plaintiff accuses Showalter of "lying" on his medical report by stating that he was in no distress, when in fact, he was. *Id* at p. 5; Civil Action 18-1519, ECF 17-3 ¶7. He faults Browning and Showalter for failing to follow protocols outlined in the DPSCS Chronic Disease Management Manual which states asthma inhalers are "Keep On Person" medications. ECF 15-1 at p. 1. He claims Browning and Showalter allowed their loyalty to prison guards to "impact their medical judgment." ECF 15 at p. 9.

Browning and Showalter dispute these assertions in their declarations. They state the information in the medical reports is accurate. Browning Decl. ECF 27-5 at p. 2 ¶5; Showalter Decl. ECF 27-5 at pp. 4–5 ¶5. Further, they deny any aspect of the care they provided to plaintiff

was motivated by retribution or malicious intent. Browning Decl. ECF 27-5 at p. 3 ¶6; Showalter Decl. ECF 27-5 at p. 5 ¶6.

Plaintiff alleges that for twelve days after the January 26, 2017, incident, he was denied the use of his prescribed Albuterol inhaler. ECF 15 at p. 2. On February 7, 2017, custody staff gave him his personal property, which included his inhaler. By February 21, 2017, the medicine in the inhaler had run out, and he had no access to an inhaler until he purchased one from another inmate on March 11, 2017. ECF 15 at p. 6.

Plaintiff submitted a sick call slip on February 17 and February 21, 2017, asking for something to wash pepper spray residue from his hair. ECF 27-4 at pp. 5–6. The medical record indicates that he refused to attend the February 23, 2017 appointment scheduled for him. ECF 27-3 at p. 9; ECF 27-4 at p. 6. He filed an additional sick call slip on March 24, 2017 for shampoo to remove the pepper spray, and on March 28, 2017, was seen by a medical provider who gave him Tums for indigestion at night when he is lies down, tar shampoo for his hair, and suggested exercises to alleviate his back pain. Plaintiff expressed no other concerns to the medical provider. ECF 27-4 at pp. 8, 11; ECF 27-3 at p. 10.

In response to his March 30, 2017 sick call slip, asking for milk of magnesia, plaintiff was seen by a nurse on April 4, 2017, for complaints of stomach discomfort when lying down and after eating. He was provided Omeprazole (Prilosec). ECF 27-3 at p. 12; ECF 27-4 at p. 12.

On April 21, 2017, plaintiff filed a sick call slip seeking care for his allergies to pollen, grass, and dust, and was seen by a provider two days later. Plaintiff stated that he gets "allergies each year and usually gets multiple respiratory medications to help him." ECF 27-3 at p. 14; ECF 27-4 at pp. 15–16. It was noted that he has been provided an inhaler in the past. Plaintiff was in no acute distress and was referred to see a physician. *Id.*

5

On April 26, 2017, plaintiff was seen by Dr. Mahboob Ashraf for allergies. ECF 27-3 at p. 16–17. Ashraf ordered guaifenesin, tums, omeprazole, Nasacort AQ, T-gel, chlor-trimeton (chlorphenirame maleate), and Ventolin HFA (albuterol sulfate).[7] *Id.* Plaintiff states these medications were to treat his asthma, reflux, allergies and the "harmful impact of the chemical compound having been left so long in my hair and on my scalp." ECF 1 at p. 3; ECF 15 at p. 6 ¶6. Plaintiff states he received the medications "once without undue delay." ECF 15 at p. 6 ¶6.

Plaintiff asserts that when his supply of these medications ran out, the refills were not provided despite his filing "a multitude of sick call requests and medication re-fill requests." ECF 1 at p. 4; ECF 15 at p. 7; ECF 27-4 at pp. 17–18, 20–22, 24–27, 29–30, 33–34. Plaintiff claims he was "forced to purchase asthma inhalers" from other inmates because his prescription was not refilled. ECF 1 at p. 4; ECF 15 at p. 7. He claims that for "a nine month period [he] did not receive the medicinals as prescribed," and was therefore without the attendant health benefits. ECF 15 at p. 7.

## II. The State Defendants

Plaintiff is suing Corcoran and Nines in their official capacities. ECF 15 at pp. 11–12. He alleges they were aware of his need for refills on his prescriptions based on the "multiple complaints" he filed. *Id.* at 10. He claims they are liable because they signed the responses to his ARP requests and appeals. Additionally, he alleges Corcoran and Nines failed to ensure that the medical staff responsible for processing prescriptions were educated on the proper protocols and did not ensure that he received his medication refills. *Id.* at pp. 10–12; ECF 37-1 at pp. 3, 10.

Plaintiff claims he received no response to his sick call requests. ECF 1 at p. 5; *see also*

---

[7] *See* Ventolin HFA, https://www.ventolin.com/. Chlorpheniramine maleate is an antihistamine for allergies, nasacort and guaifenesin are nasal decongestants, and omeprazole is a medication for heartburn similar to Prilosec. ECF 27-1 at pp. 1–2, 4.

sick call requests, ECF 25-4 at p. 14. Notably, sick call slips are reviewed by medical, not correctional staff. Nines' Decl. ECF 25-3 at 2 ¶4.

On July 31, 2017, plaintiff filed ARP NBCI-1779-17, alleging that he had requested a sick call about his asthma. ECF 1-2 at p. 1; ECF 25-4 at pp. 23, 25. The ARP was investigated and it was determined that no sick call was received from plaintiff in July 2017, but plaintiff was seen on August 17, 2017 for medication renewals for shampoo and to treat his heart burn, and on September 13, 2017, he had refused to attend a sick call appointment. ECF 25-4 at pp. 26–28. On September 23, 2017, Nines dismissed the ARP as without merit:

> Specifically, you claim that you submitted a sick call slip on 7/23/17, but were never seen. An investigation revealed that there is no record of you submitting a sick call slip in the month of July 2017. It is documented that you were seen on 8/17/17 for medication renewals. There were no documented complaints concerning your asthma. Your administrative remedy allegations are without merit.

*Id.* at 25.

Plaintiff appealed the dismissal to the Commissioner of Correction. On October 27, 2017, Commissioner Corcoran dismissed the appeal after an investigation. ECF 1-2 at p. 4; ECF 25-4 at p. 22.

On September 28, 2017, plaintiff filed ARP NBCI 2287-17, alleging he had submitted four sick call slips for his Prilosec refill. He complained of constant "chest cramps and heart burns" because his medications were not being refilled in a timely fashion. ECF 25-4 at p. 32; ECF 15-1 at p. 17. The ARP was investigated, and it was noted that "Correct Rx Pharmacy was contacted and per them, Prilosec was filled on 8/17/17 (the day it was ordered) and then not again until 10/26/17 despite sick calls being turned in." ECF 25-4 at p. 34. In the ARP response, Nines deemed the ARP meritorious.

> An investigation revealed that according to your medical file, you placed several sick calls requesting a refill of Prilosec, but there is no documentation that you ever

received it. It is reported that this medication was filled again on October 26, 2017. Nursing staff is to be educated on the refill of medications and the processing of sick calls. No further action is required.

*Id.* at 32.[8]

Plaintiff claims that "Jane/John Doe Nursing Staff" in their "official and individual capacities" failed to provide or only sporadically provided his medication refills between April 26, 2017 and December 29, 2017. ECF 15 at p. 13–14. He seeks an order allowing him access to medical records to "elucidate factual matters wherein I am in dispute with defendants assertions." *Id.* at 15.

## STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to

---

[8] On July 18, 2017, plaintiff filed ARP NBCI-1654-16, complaining he had submitted multiple sick call slips to review his medical file, but had not been provided access to his records. ECF 25-4 at p. 5. On August 14, 2017, Nines responded the ARP was meritorious. "An investigation revealed that you submitted sick calls on 5/25/17, 5/27/17 and 6/6/17 requesting to review your medical file, but were not scheduled for this review." *Id.* The response indicated plaintiff was scheduled to review his medical records on August 15, 2017, and concluded no further action was necessary through the ARP process. *Id.* Plaintiff appealed the decision, and on December 21, 2017, Commissioner Corcoran dismissed the appeal after investigation. *Id.* at pp. 4, 9–11.

8

dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses

from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

### I. Claims Against the State Defendants

The State Defendants argue they are entitled to dismissal of the claims against them or summary judgment in their favor on several grounds, including Eleventh Amendment immunity, lack of personal participation, and qualified immunity.[9] Further, they argue plaintiff's allegations fail to establish a constitutional violation.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1984). The subjective component examines whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An Eighth Amendment claim for deliberate indifference to a serious medical need raised against a correctional official requires evidence that they: (1) "failed promptly to provide" needed medical care; (2) "deliberately interfered with the prison doctors' performance"; or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The State Defendants may rely on the expertise of medical providers. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier*, 896 F.2d at 854–55

---

[9] Because the court finds no constitutional injury, the State Defendants' qualified immunity defense will not be addressed.

10

(supervisory prison officials may rely on professional judgments of medical providers but may be found liable based on "supervisory indifference or tacit authorization of subordinate misconduct."). A prison official must have both known of a serious risk of harm and recognized that his or her actions were insufficient or "inappropriate in light of that risk" to support an Eighth Amendment claim. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (analyzing a Fourteenth Amendment claim but using the same standard "as that which applies to cases arising under the Eighth Amendment, where prison officials are accused of deliberate indifference to a substantial risk of serious harm to prison inmates," *Id.* at 302 n.11.).

Plaintiff brings suit against Corcoran and Nines solely in their official capacities.[10] Under the Eleventh Amendment to the United States Constitution, a state as well as its agencies and departments are immune from suit brought in federal court by its citizens or the citizens of another state, absent narrow exceptions not relevant here. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state official for acts performed in his official capacity is equivalent to suing the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-104(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original). Accordingly, the claims against the State Defendants will be dismissed. Further, even if these claims had been raised against Corcoran and Nimes in their individual capacities, or plaintiff had sought relief in addition to

---

[10] Plaintiff expressly states his claims against Corcoran and Nines are in their official capacities, as compared to the claims he brings against the "Jane/John Doe Nursing Staff" in their "individual and personal capacities." ECF No. 15 at pp. 11–13. No claims are brought against Corcoran and Nines in their individual capacities.

11

monetary damages, his claims against these two defendants would be unavailing as discussed below.

Plaintiff filed this case pursuant to 42 U.S.C. § 1983, which requires that individual liability must be based on personal conduct. *See Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977); *see also Foote v. Spiegel,* 118 F.3d 1416, 1423–24 (10th Cir. 1997). The claims against Corcoran and Nines are based on their knowledge of plaintiff's complaints about his medical care as evidenced by their signatures on his ARP responses and appeals. Further, plaintiff alleges Corcoran and Nines are liable because they failed to enforce procedures regarding medical care or to make further inquiry about whether he received his medications. ECF 15 at pp. 10–12. Corcoran and Nines investigated his claims, however, and when some were found meritorious appropriate action was taken. That they found plaintiff's other claims unsupported after investigation does not show they denied or interfered with his medical care.

There is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown,* 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001). To the extent plaintiff seeks to impose liability on Corcoran and Nines as supervisory officials, such claims in a § 1983 action are "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). To

establish supervisory liability, a plaintiff must show the "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury" to the plaintiff; (2) that the supervisor's response was so "inadequate as to show 'deliberate indifference to or tacit authorization'" and (3) that there was an "'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).

Medical services are provided to NBCI inmates by a private medical contractor. Nines's Decl. ECF 25-3 ¶3. Nines does not supervise the medical contractor's medical staff. Nines states that he has no authority to make decisions concerning any inmate's medical care or to order medical staff to provide a particular medical procedure or particular treatment. *Id.* Further, Nines is not responsible under the medical contract for monitoring medical services for NBCI inmates, is not licensed to practice medicine, and defers to the expertise of medical staff for inmate care and treatment. *Id.* Nines explains that when an inmate completes a sick call slip for medical evaluation and treatment, the medical contractor collects and reviews the sick call slip, and then determines appointment dates and times. *Id.* at ¶4. Further, when he responds to inmate complaints about medical care, he relies on the reports, assessments and judgments of the contractor's medical staff to prepare a response for his signature. *Id.* at ¶5. Nines denies interfering with, hindering or delaying plaintiff's medical treatment. *Id.* at ¶6. Plaintiff provides no declaration to refute Nines's assertions.

Plaintiff's ARP complaints were reviewed and then assigned to medical staff for investigation. After investigation and recommendation, the ARP or appeals decisions were rendered. To the extent plaintiff suggests the State Defendants, based on one or two ARP responses, are culpable for failing to ensure medical protocols are followed, a genuine dispute of

13

material fact may not be created through speculation or "compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001). Further, in instances where the investigation revealed that protocols were not followed, corrective measures were taken and staff were instructed to observe those protocols. There is no evidence that Corcoran and Nines took any deliberate steps to interfere with plaintiff's medical care, nor did they turn a blind eye to clear failures to observe necessary protocols when there was evidence to support that claim. *C.f. Gordon v. Schilling*, No. 17-7298, at 18 (4th Cir. Sept. 4, 2019) (finding a factfinder could conclude that the Department of Corrections Health Services Director disregarded a substantial risk of harm to a prisoner from Hepatitis C Virus when he "repeatedly passed the buck" and informed the prisoner to submit sick calls when he knew that guidelines prevented prison doctors from ordering the appropriate treatment). Absent such evidence, a claim of supervisory liability is simply unsupported. Accordingly, the State Defendants' motion for summary judgment will be granted.

Plaintiff claims that defendants violated his rights under the Equal Protection Clause without providing an explanation or supporting facts. Plaintiff's conclusory assertion fails to show that he "has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Accordingly, the complaint fails to establish an equal protection claim.

**E. State Law Claims**

It is unclear in the complaint what state laws or departmental regulations plaintiff asserts have been violated by Corcoran and Nines. To the extent plaintiff has raised any claims premised on state law against Corcoran and Nines, the court declines to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). When "the federal-law claims have dropped out of the lawsuit in its early

stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–27 (1966)). Plaintiff's state claims will be dismissed without prejudice.

## II. Claims Against the Medical Defendants

Plaintiff asserts the Medical Defendants violated his rights under the Eighth Amendment by denying him necessary medical care and failing to refill his prescriptions as retaliation for his involvement in an incident with correctional officers.

In regard to his claim that he was denied medical care, plaintiff and the Medical Defendants have filed declarations offering differing accounts of plaintiff's symptoms and medical care provided to him on January 26, 2017. The parties dispute whether the Medical Defendants deliberately falsified medical records with unlawful retaliatory intent because plaintiff was involved in a use of force incident with corrections staff. Plaintiff does not allege, however, that Browning or Showalter were personally involved in collecting or reviewing sick call requests or ordering his medical refills later in 2017.

Viewed in the light most favorable to plaintiff, there is a genuine dispute of material fact as to whether Browning and Showalter acted with deliberate indifference to deny him medical care on January 26, 2017, in retaliation for his involvement in the assault incident earlier that day. The parties' declarations offer differing accounts and raise issues of credibility, inappropriate for resolution on summary judgment. Plaintiff has provided no evidence to create a genuine dispute of material fact, however, as to whether Browning and Showalter denied plaintiff medical care relating to the later allegations concerning sick call requests and medical refills. Accordingly, the court will deny in part the Medical Defendants' motion for summary judgment as to the January

15

26, 2017 medical care claims, and will grant in part the motion for summary judgment as to all other claims. Plaintiff will be granted twenty-eight days to move for appointment of counsel.

## CONCLUSION

For these reasons, the court will grant the State Defendants' motion for summary judgment (ECF 25) and will grant in part and deny in part the Medical Defendants' motion for summary judgment (ECF 27). A separate Order follows.

_9/11/19_  
Date

_CCB_  
Catherine C. Blake  
United States District Judge